Loan Number ███
Borrower: KATHY T COLFAX
Property Address: 61 BOONTON AVE, BUTLER, NEW JERSEY 07405

# Collateral Mod Agreement

## (Indexed Returned Doc as BAU Signed Final Mod Agreement)

Date: FEBRUARY 14, 2014        Document Version: ver. ███

Is the Modification Agreement the correct and most recent version?  YES

Is the Modification Agreement unmarked?  YES

Is the Modification Agreement signed by all borrowers?  YES

Did each borrower date their signature lines?  YES

Is the notary section correctly completed?  YES

Do the borrowers' signature dates match the notary date?  YES

Are all witness lines executed?  N/A

Are all witness signatures truly witnesses?  N/A

Are the signatures original/"wet" signatures?  YES

Is the Lender signature line/notary section clean and unmarked?  YES

**Borrower Sig Date:        02-07-2014**

**QC Pass**

# JPMC Separation Page

Printed @: LLN

## Loan Info:

| | |
|---|---|
| Customer ID: | **JPMC-WAMU** |
| Loan Number: | ▊▊▊▊▊ |
| LOB: | **WAMU** |
| Borrower Name: | **KATHY T COLFAX** |
| Property Address: | **61 BOONTON AVE** |
| | **BUTLER    NEW JERSEY    07405** |

## To:

| | |
|---|---|
| Borrower Name: | **KATHY T COLFAX** |
| Mailing Address: | **61 BOONTON AVE** |
| | **BUTLER    NEW JERSEY** |
| | **07405** |

Mod: Passed QC;
QPMA;

## From: **WAMU**

**Package Type:** **BAU_APOLLO_FINAL_QC**

**Number of Envelopes:** **0**



# DO_NOT_MAIL

Ship Date: **N/A**

Recording Requested By/Return To:
**JPMORGAN CHASE BANK, N.A.
CHASE RECORDS CENTER
RE: COLLATERAL TRAILING
DOCUMENTS
PO BOX 8000
MONROE, LA 71203**

This Instrument Prepared By:

**JPMORGAN CHASE BANK, N.A.
2210 ENTERPRISE DRIVE
FLORENCE, SC 29501-1109**

Signature: _____

———————————————— [Space Above This Line For Recording Data] ————————————————

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

ORIGINAL MORTGAGE AMOUNT: $128,000.00

Loan Number ▇▇▇▇▇▇▇

This Loan Modification Agreement ("Agreement"), will become effective on: 1ST day of MARCH, 2014, between KATHY T COLFAX SINGLE ("Borrower") and JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA ("Lender") whose address is **CHASE, 780 KANSAS, FLOOR 2, MONROE, LOUISIANA 71203-4774** amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument"), and Timely Payment Rewards Rider, if any, dated JANUARY 21, 2003 and recorded in reference numbers of documents modified: RECORDED JANUARY 30, 2003 BOOK 13411 PAGE 2 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real property described in the Security Instrument and defined therein as the "Property", located at

61 BOONTON AVE, BUTLER, NEW JERSEY 07405
(Property Address)

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae  UNIFORM INSTRUMENT
v▇▇▇▇▇▇▇▇▇▇▇▇▇▇    Form 3179 WF501                              6.2013 CR4063 CR4064 CR4127
(page 1 of 9 pages)

Loan Number ▮▮▮▮▮

the real property described being set forth as follows:

LEGAL DESCRIPTION:
THE LAND IS SITUATED IN THE STATE OF NEW JERSEY, COUNTY OF MORRIS, BOROUGH OF BUTLER, AND DESCRIBED AS FOLLOWS: BEGINNING AT A STAKE IN THE WESTERLY LINE OF BOONTON AVENUE DISTANT 33.33 FEET NORTHEASTERLY ON SAID LINE FROM ITS INTERSECTION WITH THE NORTHERLY LINE OF ELM STREET, FORMERLY COWDREY LANE, SAID STAKE BEING THE SECOND CORNER IN A DEED MADE BY BRIDGE CLEARY AND OTHERS TO MARY DWYER, DATED AUGUST 10, 1920 AND RECORDED IN BOOK F-26 OF DEEDS, PAGE 489, AND FROM SAID STAKE RUNNING, (1) ALONG THE SECOND LINE OF SAID LAST MENTIONED LOT, NORTH 61 DEGREES 7 MINUTES WEST 157.64 FEET TO THE THIRD CORNER OF SAME IN THE OUTSIDE LINE OF THE WHOLE TRACT OF WHICH THE LAND HEREIN DESCRIBED IS A PART, (2) ALONG THE SAID OUTSIDE LINE NORTH 44 DEGREES 49 MINUTES EAST 53.15 FEET TO A STAKE, THE FOURTH CORNER OF A LOT CONVEYED BY WILLIAMS J. CLEARY ET ALS TO BRIDGE CLEARY, BY DEED DATED AUGUST 10, 1920 AND RECORDED IN BOOK I-26 OF DEEDS, PAGE 433, (3) ALONG THE FOURTH LINE OF SAID LOT SOUTH 54 DEGREES 58 MINUTES EAST, 153.60 FEET TO THE BEGINNING CORNER OF SAME IN THE LINE OF BOONTON AVENUE, (4) ALONG THE LINE OF SAID AVENUE, SOUTH 44 DEGREES 20 MINUTES WEST 33.33 FEET TO THE PLACE OF BEGINNING. APN: BLOCK 39 LOT 9

Tax Parcel No: BLOCK 39 LOT 9

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of MARCH 01, 2014, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $182,419.64 consisting of the unpaid amount(s) loaned to the Borrower by the Lender plus any interest and other amounts capitalized.

2. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.000%, from FEBRUARY 01, 2014. The Borrower promises to make monthly payments of principal and interest of U.S. $1,003.70, beginning on the 1ST day of MARCH, 2014, and continuing thereafter on the same day of each succeeding month until the principal and interest are paid in full. The yearly rate of 6.000% will remain in effect until the principal and interest are paid in full. If on FEBRUARY 01, 2054 ("Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if the Borrower is not a natural person and a beneficial interest in the Property is sold or transferred) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by the Security Instrument.

**JPMC MODIFIED LOAN MODIFICATION AGREEMENT** – Single Family – Fannie Mae  **UNIFORM INSTRUMENT**
ver.▮▮▮▮▮▮▮▮▮▮    Form 3179 WF501    6.2013 CR4063 CR4064 CR4127
(page 2 of 9 pages)

Loan Number ▮▮▮▮

If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

4. The Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, or by the United States Bankruptcy Code, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of the Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which the Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by the Lender.

   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d) All costs and expenses incurred by the Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by the Lender

   (e) The Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by the Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

   (f) That, if the Borrower is in bankruptcy upon execution of this document, the Borrower will cooperate fully with the Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. The Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

5. If the Borrower previously received a chapter 7 bankruptcy discharge but did not reaffirm under applicable law amounts due under the Note:

**JPMC MODIFIED LOAN MODIFICATION AGREEMENT** – Single Family – **Fannie Mae  UNIFORM INSTRUMENT**
ver. ▮▮▮▮▮▮▮▮▮▮ Form 3179 WF501                                    6.2013 CR4063 CR4064 CR4127
                                                                            (page 3 of 9 pages)

Loan Number

(a) Notwithstanding anything to the contrary contained in this Agreement, the Borrower and the Lender acknowledge the effect of a discharge in bankruptcy that, if granted to the Borrower prior to the execution of this Agreement,
(b) The Lender may not pursue the Borrower for personal liability. However, the Borrower acknowledges that the Lender retains certain rights, including but not limited to, the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances.
(c) The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default thereunder.
(d) Nothing in this Agreement shall be construed to be an attempt to collect against the Borrower personally or an attempt to revive personal liability.

6. The Borrower hereby absolutely and unconditionally assigns and transfer to the Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, the Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in the Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

The Borrower hereby absolutely and unconditionally assigns and transfers to the Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. The Borrower authorizes the Lender or the Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or the Lender's agents. However, the Borrower shall receive the Rents until (i) the Lender has given the Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) the Lender has given notice to the tenant(s) that the Rents are to be paid to the Lender or the Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If the Lender gives notice of default to the Borrower: (i) all Rents received by the Borrower shall be held by the Borrower as trustee for the benefit of the Lender only, to be applied to the sums secured by the Security Instrument; (ii) the Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) the Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to the Lender or the Lender's agents upon the Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by the Lender or the Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) the Lender, the Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) the Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by the Lender for such purposes

JPMC MODIFIED LOAN MODIFICATION AGREEMENT -- Single Family -- Fannie Mae   UNIFORM INSTRUMENT
ver.                         Form 3179 WF501                      6.2013 CR4063 CR4064 CR4127
(page 4 of 9 pages)

Loan Number

shall become indebtedness of the Borrower to the Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

The Borrower represents and warrants that the Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent the Lender from exercising its rights under this paragraph.

The Lender, or the Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to the Borrower. However, the Lender, or the Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of the Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

7. By this paragraph, the Lender is notifying the Borrower that any prior waiver by the Lender of the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items is hereby revoked, and the Borrower has been advised of the amount needed to fully fund the Escrow Items.

8. If the original loan documents did not include standard provisions for escrow items, the Borrower will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by the Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to the Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that the Lender requires to be escrowed. These items are called "Escrow Items." The Borrower shall promptly furnish to the Lender all notices of amounts to be paid under this paragraph. The Borrower shall pay the Lender the Funds for Escrow Items unless the Lender waives the Borrower's obligation to pay the Funds for any or all Escrow Items. The Lender may waive the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, the Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by the Lender and, if the Lender requires, shall furnish to the Lender receipts evidencing such payment within such time period as the Lender may require. The Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If the Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and the Borrower fails to pay the amount due for an Escrow Item, the Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and the Borrower shall then be obligated to repay to the Lender any such amount. The Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, the Borrower shall pay to the Lender all Funds, and in such amounts, that are then required under this paragraph.

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae  UNIFORM INSTRUMENT
ver.                      Form 3179 WF501                                6.2013 CR4063 CR4064 CR4127
(page 5 of 9 pages)

Loan Number ▮

The Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit the Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. The Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including the Lender, if the Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. The Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. The Lender shall not charge the Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless the Lender pays the Borrower interest on the Funds and applicable law permits the Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, the Lender shall not be required to pay the Borrower any interest or earnings on the Funds. The Lender and the Borrower can agree in writing, however, that interest shall be paid on the Funds. The Lender shall provide the Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, the Lender shall account to the Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, the Lender shall notify the Borrower as required by RESPA, and the Borrower shall pay to the Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, the Lender shall notify the Borrower as required by RESPA, and the Borrower shall pay to the Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, the Lender shall promptly refund to the Borrower any Funds held by the Lender.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

Loan Number ▮▮▮▮

## TO BE SIGNED BY BORROWER ONLY

**BORROWER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA And KATHY T COLFAX SINGLE, LOAN NUMBER ▮▮▮▮ WITH A MODIFICATION EFFECTIVE DATE OF March 01, 2014

In Witness Whereof, the Borrower(s) have executed this agreement.

_/s/ Kathy T Colfax_
Borrower - KATHY T COLFAX

Date: 2/07/2014

### CERTIFICATE OF ACKNOWLEDGMENT

State of **NEW JERSEY**          )
County of _Morris_               )
                                 )

On the _7th_ day of _February_, _2014_,
before me, _Dillon J Wosyluk_, a Notary Public of the State and County aforesaid personally appeared **KATHY T COLFAX**, who I am satisfied is/are the Person(s) named in and who executed the within instrument; and he/she/they signed, sealed and delivered the same as his/her/their act and deed for the uses and purposes therein expressed.

_/s/ Dillon J Wosyluk_
Notary Public

(SEAL)
My Commission Expires: _5/17/17_

DILLON J. WOSYLUK
Notary Public, State of NJ
My Commission Expires May 17, 2017

[Notary Seal: DILLON J. WOSYLUK, NOTARY PUBLIC, STATE OF NEW JERSEY]

---

**JPMC MODIFIED LOAN MODIFICATION AGREEMENT** – Single Family – Fannie Mae  **UNIFORM INSTRUMENT**
ver. ▮▮▮▮   Form 3179 WF501       6.2013 CR4063 CR4064 CR4127
(page 7 of 9 pages)

Loan Number █████

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA And KATHY T COLFAX SINGLE, LOAN NUMBER █████ WITH A MODIFICATION EFFECTIVE DATE OF March 01, 2014

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA**

By: _____

Printed Name:

Date: _____

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – **Fannie Mae**   UNIFORM INSTRUMENT
v█████    Form 3179 WF501                                                          6.2013 CR4063 CR4064 CR4127
(page 8 of 9 pages)

Loan Number ███

State of MICHIGAN
County of OAKLAND    SS.:

I CERTIFY that on _____, _____
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as Vice President of JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, a national banking association the entity named in this instrument; and,
(c) executed this instrument as the act of the entity named in this instrument.

_____,
Name and Title
Printed Name:

(SEAL)
My Commission expires: _____

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae  UNIFORM INSTRUMENT
████████████   Form 3179 WF501                               6.2013 CR4063 CR4064 CR4127
                                                                   (page 9 of 9 pages)

Recording Requested By/Return To:
JPMORGAN CHASE BANK, N.A.
CHASE RECORDS CENTER
RE: COLLATERAL TRAILING
DOCUMENTS
PO BOX 8000
MONROE, LA 71203

This Instrument Prepared By:

JPMORGAN CHASE BANK, N.A.
2210 ENTERPRISE DRIVE
FLORENCE, SC 29501-1109

Signature: _____

———————————— [Space Above This Line For Recording Data] ————————————

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

ORIGINAL MORTGAGE AMOUNT: $128,000.00

**Loan Number** ▮▮▮▮▮▮▮

This Loan Modification Agreement ("Agreement"), will become effective on: 1ST day of MARCH, 2014, between KATHY T COLFAX SINGLE ("Borrower") and JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA ("Lender") whose address is **CHASE, 780 KANSAS, FLOOR 2, MONROE, LOUISIANA 71203-4774** amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument"), and Timely Payment Rewards Rider, if any, dated JANUARY 21, 2003 and recorded in reference numbers of documents modified: RECORDED JANUARY 30, 2003 BOOK 13411 PAGE 2 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real property described in the Security Instrument and defined therein as the "Property", located at

61 BOONTON AVE, BUTLER, NEW JERSEY 07405
(Property Address)

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae UNIFORM INSTRUMENT
▮▮▮▮▮▮▮▮▮▮ Form 3179 WF501    6.2013 CR4063 CR4064 CR4127
(page 1 of 9 pages)

Loan Number ███

the real property described being set forth as follows:

LEGAL DESCRIPTION:
THE LAND IS SITUATED IN THE STATE OF NEW JERSEY, COUNTY OF MORRIS, BOROUGH OF BUTLER, AND DESCRIBED AS FOLLOWS: BEGINNING AT A STAKE IN THE WESTERLY LINE OF BOONTON AVENUE DISTANT 33.33 FEET NORTHEASTERLY ON SAID LINE FROM ITS INTERSECTION WITH THE NORTHERLY LINE OF ELM STREET, FORMERLY COWDREY LANE, SAID STAKE BEING THE SECOND CORNER IN A DEED MADE BY BRIDGE CLEARY AND OTHERS TO MARY DWYER, DATED AUGUST 10, 1920 AND RECORDED IN BOOK F-26 OF DEEDS, PAGE 489, AND FROM SAID STAKE RUNNING, (1) ALONG THE SECOND LINE OF SAID LAST MENTIONED LOT, NORTH 61 DEGREES 7 MINUTES WEST 157.64 FEET TO THE THIRD CORNER OF SAME IN THE OUTSIDE LINE OF THE WHOLE TRACT OF WHICH THE LAND HEREIN DESCRIBED IS A PART, (2) ALONG THE SAID OUTSIDE LINE NORTH 44 DEGREES 49 MINUTES EAST 53.15 FEET TO A STAKE, THE FOURTH CORNER OF A LOT CONVEYED BY WILLIAMS J. CLEARY ET ALS TO BRIDGE CLEARY, BY DEED DATED AUGUST 10, 1920 AND RECORDED IN BOOK I-26 OF DEEDS, PAGE 433, (3) ALONG THE FOURTH LINE OF SAID LOT SOUTH 54 DEGREES 58 MINUTES EAST, 153.60 FEET TO THE BEGINNING CORNER OF SAME IN THE LINE OF BOONTON AVENUE, (4) ALONG THE LINE OF SAID AVENUE, SOUTH 44 DEGREES 20 MINUTES WEST 33.33 FEET TO THE PLACE OF BEGINNING. APN: BLOCK 39 LOT 9

Tax Parcel No: BLOCK 39 LOT 9

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of MARCH 01, 2014, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $182,419.64 consisting of the unpaid amount(s) loaned to the Borrower by the Lender plus any interest and other amounts capitalized.

2. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.000%, from FEBRUARY 01, 2014. The Borrower promises to make monthly payments of principal and interest of U.S. $1,003.70, beginning on the 1ST day of MARCH, 2014, and continuing thereafter on the same day of each succeeding month until the principal and interest are paid in full. The yearly rate of 6.000% will remain in effect until the principal and interest are paid in full. If on FEBRUARY 01, 2054 ("Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if the Borrower is not a natural person and a beneficial interest in the Property is sold or transferred) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by the Security Instrument.

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae   UNIFORM INSTRUMENT
███         Form 3179 WF501                                              6.2013 CR4063 CR4064 CR4127
                                                                              (page 2 of 9 pages)

Loan Number

If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

4. The Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, or by the United States Bankruptcy Code, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of the Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which the Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by the Lender.

   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d) All costs and expenses incurred by the Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by the Lender

   (e) The Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by the Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

   (f) That, if the Borrower is in bankruptcy upon execution of this document, the Borrower will cooperate fully with the Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. The Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

5. If the Borrower previously received a chapter 7 bankruptcy discharge but did not reaffirm under applicable law amounts due under the Note:

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae    UNIFORM INSTRUMENT
Form 3179 WF501                                                              6.2013 CR4063 CR4064 CR4127
(page 3 of 9 pages)

Loan Number ▮

(a) Notwithstanding anything to the contrary contained in this Agreement, the Borrower and the Lender acknowledge the effect of a discharge in bankruptcy that, if granted to the Borrower prior to the execution of this Agreement,

(b) The Lender may not pursue the Borrower for personal liability. However, the Borrower acknowledges that the Lender retains certain rights, including but not limited to, the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances.

(c) The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default thereunder.

(d) Nothing in this Agreement shall be construed to be an attempt to collect against the Borrower personally or an attempt to revive personal liability.

6. The Borrower hereby absolutely and unconditionally assigns and transfer to the Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, the Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in the Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

The Borrower hereby absolutely and unconditionally assigns and transfers to the Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. The Borrower authorizes the Lender or the Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or the Lender's agents. However, the Borrower shall receive the Rents until (i) the Lender has given the Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) the Lender has given notice to the tenant(s) that the Rents are to be paid to the Lender or the Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If the Lender gives notice of default to the Borrower: (i) all Rents received by the Borrower shall be held by the Borrower as trustee for the benefit of the Lender only, to be applied to the sums secured by the Security Instrument; (ii) the Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) the Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to the Lender or the Lender's agents upon the Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by the Lender or the Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) the Lender, the Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) the Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by the Lender for such purposes

Loan Number ███

shall become indebtedness of the Borrower to the Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

The Borrower represents and warrants that the Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent the Lender from exercising its rights under this paragraph.

The Lender, or the Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to the Borrower. However, the Lender, or the Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of the Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

7. By this paragraph, the Lender is notifying the Borrower that any prior waiver by the Lender of the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items is hereby revoked, and the Borrower has been advised of the amount needed to fully fund the Escrow Items.

8. If the original loan documents did not include standard provisions for escrow items, the Borrower will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by the Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to the Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that the Lender requires to be escrowed. These items are called "Escrow Items." The Borrower shall promptly furnish to the Lender all notices of amounts to be paid under this paragraph. The Borrower shall pay the Lender the Funds for Escrow Items unless the Lender waives the Borrower's obligation to pay the Funds for any or all Escrow Items. The Lender may waive the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, the Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by the Lender and, if the Lender requires, shall furnish to the Lender receipts evidencing such payment within such time period as the Lender may require. The Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If the Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and the Borrower fails to pay the amount due for an Escrow Item, the Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and the Borrower shall then be obligated to repay to the Lender any such amount. The Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, the Borrower shall pay to the Lender all Funds, and in such amounts, that are then required under this paragraph.

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae  UNIFORM INSTRUMENT
███    Form 3179 WF501                                                    6.2013 CR4063 CR4064 CR4127
                                                                          (page 5 of 9 pages)

Loan Number

The Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit the Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. The Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including the Lender, if the Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. The Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. The Lender shall not charge the Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless the Lender pays the Borrower interest on the Funds and applicable law permits the Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, the Lender shall not be required to pay the Borrower any interest or earnings on the Funds. The Lender and the Borrower can agree in writing, however, that interest shall be paid on the Funds. The Lender shall provide the Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, the Lender shall account to the Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, the Lender shall notify the Borrower as required by RESPA, and the Borrower shall pay to the Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, the Lender shall notify the Borrower as required by RESPA, and the Borrower shall pay to the Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, the Lender shall promptly refund to the Borrower any Funds held by the Lender.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

Loan Number ▮

## TO BE SIGNED BY BORROWER ONLY

**BORROWER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA And KATHY T COLFAX SINGLE, LOAN NUMBER ▮ WITH A MODIFICATION EFFECTIVE DATE OF March 01, 2014

In Witness Whereof, the Borrower(s) have executed this agreement.

_____   Date: 2/07/2014
Borrower - KATHY T COLFAX

### CERTIFICATE OF ACKNOWLEDGMENT

State of **NEW JERSEY**          )
County of _Morris_               )
                                 )

On the _7th_ day of _February_, _2014_, before me, _Dillon J Wosyluk_, a Notary Public of the State and County aforesaid personally appeared **KATHY T COLFAX**, who I am satisfied is/are the Person(s) named in and who executed the within instrument; and he/she/they signed, sealed and delivered the same as his/her/their act and deed for the uses and purposes therein expressed.

_____
Notary Public

(SEAL)
My Commission Expires: 5/17/17

DILLON J. WOSYLUK
Notary Public, State of NJ
My Commission Expires May 17, 2017



JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae   UNIFORM INSTRUMENT
▮                    Form 3179 WF501                                     6.2013 CR4063 CR4064 CR4127
                                                                         (page 7 of 9 pages)

Loan Number ███

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA And KATHY T COLFAX SINGLE, LOAN NUMBER ███ WITH A MODIFICATION EFFECTIVE DATE OF March 01, 2014

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA**

By: _____

Printed Name:

Date: _____

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – **Fannie Mae** UNIFORM INSTRUMENT
███ Form 3179 WF501      6.2013 CR4063 CR4064 CR4127
(page 8 of 9 pages)

Loan Number ▮

State of MICHIGAN
County of OAKLAND    SS.:

I CERTIFY that on _____, _____
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as Vice President of JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, a national banking association the entity named in this instrument; and,
(c) executed this instrument as the act of the entity named in this instrument.

_____
Name and Title
Printed Name:

(SEAL)
My Commission expires: _____

**JPMC MODIFIED LOAN MODIFICATION AGREEMENT** – Single Family – **Fannie Mae**   **UNIFORM INSTRUMENT**
    Form 3179 WF501                                                                                   6.2013 CR4063 CR4064 CR4127
                                                                                                          (page 9 of 9 pages)